UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ROSIE GILLESPIE PLAINTIFF

VS. CIVIL ACTION NO. 4:05CV189TSL-LRA

CITY OF MACON, MISSISSIPPI,
WILLIE DIXON AND ROBERT BOYKIN DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants City of Macon, Willie Dixon, Jr. and Robert Boykin for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Rosie Gillespie has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be granted in part and denied in part, as follows.

On July 5, 2005, after nearly twenty-eight years of employment with the City of Macon, the Board of Aldermen voted to terminate Rosie Gillespie's employment. Though the Board assigned no reason for Gillespie's termination at its meeting in which this vote was taken, Mayor Robert Boykin reported publicly to the news media that she had been terminated for her "job performance." Gillespie alleges, however, that she learned Boykin had stated privately that she was fired because she did not support him in

the mayoral election. She claims she also learned that defendant Willie Dixon, a member of the board of aldermen, had told members of the community that she was fired because she was "stealing."

Following her termination, Gillespie's attorney wrote letters to the mayor and to the members of the Board of Aldermen, dated July 28, 2005 and August 5, 2005, requesting notice of the reason for Gillespie's termination, questioning why she had not been given a due process hearing, and asking that the Board reconsider its firing decision. The City responded with a letter from its attorney stating simply that Gillespie would not be rehired.

Eventually, Gillespie filed the present lawsuit on December 13, 2005 alleging § 1983 claims for violation of her due process and equal protection rights, and her First Amendment free speech rights, and asserting, as well, state law claims for breach of contract, slander and defamation, all relating to her termination and events surrounding her termination.

Defendants have moved for summary judgment on all of plaintiff's claims. Their arguments are addressed seriatim.[1]

---

[1] Plaintiff alleged that following her termination, the City failed to pay her for the one week's wages and four weeks' vacation pay that was owed to her at the time of her termination, and that in this manner, the City breached her employment contract and violated her equal protection and due process rights. Defendants have since tendered her a check for the claimed back pay, vacation pay and sick pay, and plaintiff thus concedes any claim for actual damages based on the City's failure to pay these benefits. She argues, though, that the failure to pay these benefits would provide a basis for her claim for punitive damages. The court notes, however, that this claim is asserted against the

Defendants contend plaintiff has no cognizable claim for any possible alleged procedural due process violation because as an at-will employee, Gillespie did not have a property interest in her position. In her response, Gillespie does not challenge defendants' argument that she had no property interest in her employment, and that as such, she can not maintain a due process claim on this basis. See Farias v. Bexar County Board of Trustees for Mental Health Mental Retardation Servs., 925 F.2d 866, 877 (5th Cir. 1991) (holding that because an employee could be discharged at will, he had no protectible property interest and no right to a due process hearing); King v. Newton County Bd. of Sup'rs, 144 Fed. Appx. 381, 384, 2005 WL 1750102, 3 (5th Cir. 2005) (where county's employment manual made clear that employee was an at-will employee, employee had no property interest in her employment and her § 1983 claim for due process violation failed as matter of law).

Defendants further argue that the evidence does not support a finding that Gillespie's claimed liberty interest was violated, particularly as she has not presented evidence either that she was defamed or that she requested a name-clearing hearing in connection with her termination.

---

City, and the City cannot be held liable for punitive damages. See Jefferson v. City of Tarrant, Ala., 522 U.S. 75, 75, 118 S. Ct. 481, 482 (1997) ("§ 1983 plaintiffs may not recover punitive damages against a municipality") (citing City of Newport v. Fact Concerts, 453 U.S. 247, 271, 101 S. Ct. 2748, 2762 (1981)).

The Supreme Court has recognized a procedural due process right to notice and an opportunity to clear one's name when the government discharges an employee in a manner that puts the employee's "good name, reputation, honor, or integrity . . . at stake." See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); see also Hughes v. City of Garland, 204 F.3d 223, 225-26 (5th Cir. 2000). To prevail on her claim that the City infringed upon a cognizable liberty interest by denying her the opportunity to clear her name, Gillespie must show: "(1) that she was discharged; (2) that stigmatizing charges were made against her in connection with the discharge; (3) that the charges were false; (4) that she was not provided notice or an opportunity to be heard prior to her discharge; (5) that the charges were made public; (6) that she requested a hearing to clear her name; and (7) that the employer refused her request for a hearing." Hughes, 204 F.3d at 226. Defendants submit that other than to show she was discharged and was not provided a hearing in connection with her discharge, plaintiff cannot meet any of these elements.

Regarding the second element, defendants argue, and the court agrees, that Mayor Boykin's statement to the press that Gillespie was non-renewed because of her "job performance" is not sufficiently stigmatizing to give rise to a protected liberty

interest. The fact of discharge alone is does not trigger the protections of due process. Rather, "a liberty interest is infringed, and the right to notice and an opportunity to clear one's name arises, only when the employee is 'discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities.'" Bledsoe v. City of Horn Lake, Miss., 449 F.3d 650, 653 (5th Cir. 2006)(citations omitted); see also Felder v. Hobby, 1999 WL 1067892, 4 (5th Cir. 1999) (holding that to establish deprivation of liberty interest in reputation without due process of law, plaintiff "must first allege facts establishing that her liberty interest was implicated–namely, that she was terminated based on charges that were (1) false, (2) publicized, and (3) stigmatizing to either her standing or reputation in her professional community or her ability to find other employment"). "In order to acquire a liberty interest protected by the Fourteenth Amendment and give rise to a name clearing hearing, [plaintiff] must establish the:

> charges against [her] rise to such a level that they create a 'badge of infamy' which destroys the claimant's ability to take advantage of other employment opportunities. Additionally, the claims must be false and the claimant must show that damage to his reputation and employment opportunities has in fact occurred.

Farias, 925 F.2d at 877-78 (quoting Evans v. City of Dallas, 861 F.2d 846, 851 (5th Cir. 1988)). Elaborating on this requirement, the Fifth Circuit has explained that the kind of "moral stigma"

required to support finding a liberty interest "'usually derives from serious, specific charges and implies an inherent, or at least persistent, personal condition which both potential employers and one's peers would want to avoid.'" Felder, 1999 WL 1067892, at 5 (citing examples, including dismissals for dishonesty, for lying on job application, for having committed a serious felony, for manifest racism, for serious mental illness, and for lack of intellectual ability (as distinguished from performance)) (citations omitted). On the other hand, statements that an employee has been terminated for his or her inadequate job performance, suggest a mere "situational difficulty rather than a "'"badge of infamy,"' public scorn, or the like,"'" id. (citations omitted), and hence do not give rise to a liberty interest.[2]

---

[2] The court in Felder cited numerous examples of cases so holding, as follows:

> Vander Zee v. Reno, 73 F.3d 1365, 1369 (5 Cir. 1996) (accusation of exercising "poor judgment" not sufficiently stigmatizing to implicate liberty interest); Blackburn v. City of Marshall, 42 F.3d 925, 936 (5 Cir. 1995)(newspaper article containing adverse comments on plaintiff's qualifications and attitude insufficient); O'Neill v. City of Auburn, 23 F.3d 685, 691 (2 Cir. 1995)(charge of "incompetence" and sloppy work insufficient); Connolly v. Comptroller of the Currency, 876 F.2d 1209, 1215 (5 Cir. 1989)(public statement that plaintiff lacked qualifications insufficient); Huffstutler v. Bergland, 607 F.2d 1090, 1092 (5 Cir. 1979)(rating of honesty as "unsatisfactory" insufficient); Stretten v. Wadsworth Veterans Hospital, 537 F.2d 361 (9th Cir. 1976)(incompetence, inability and unwillingness to deal with co-workers in a professional manner insufficient).

Felder, 1999 WL 1067892, at 5.

In addition to Mayor Boykin's statement to the media, plaintiff grounds her due process claim on statements allegedly made by defendant Dixon to members of the community that Gillespie was fired because she was "stealing." While such a charge is obviously stigmatizing, defendants submit it does not provide a basis for Gillespie's claimed liberty interest because a City can speak only through its minutes, which in this case show only the decision was made not to rehire Gillesipe but give no reason for that decision, and certainly do not contain any allegation that Gillespie was stealing.

Regardless of whether Dixon's alleged statements could provide a basis for a claimed infringement of plaintiff's liberty interest, here, plaintiff's claim cannot succeed because, in the court's opinion, she never requested a name-clearing hearing in connection with this putative charge. As indicated, following the Board's vote, Gillespie's attorney sent letters to the aldermen and to the mayor expressing concern that the pubic had been given the impression by the mayor's statements to the news media that she was fired because of job performance. Gillespie, through her attorney, requested of the aldermen that she be informed of the reasons why the Board claimed her job performance was deficient, and asked also to be informed "as to why she did not get any due process hearing before such a charge was made to the public." In her letter to the mayor, Gillespie complained that the mayor's

statements to the media tended to defame her good name in the community and would have a detrimental effect in her quest for other employment, and she requested that the mayor inform her precisely what he meant when he said she was fired because of "job performance" and that he explain why she had not been given any due process hearing "whereby she would be notified of the specific charges and an opportunity to refute these charges." In the court's view, plaintiff's requests in these letters cannot reasonably be construed as a request for a name-clearing hearing, even relating to the mayor's public statement that she was fired because of her "job performance," and certainly not relating to Dixon's alleged statements in the community that she was fired for "stealing." These letters merely ask for an explanation of the problems in Gillespie's job performance which led to the decision to terminate her and for an explanation of why she had not been given a due process hearing to address any alleged performance deficiencies before her termination or at least before the charge of job performance problems was made public. This cannot reasonably be interpreted as a request for a name-clearing hearing, even as to the mayor's public announcement that plaintiff was fired because of her job performance; and there is certainly no request that she be given a public opportunity to clear her name of any charges that she had been stealing, or even so much as a hint that any such allegations had even been made regarding her

termination. For these reasons, the court concludes that the City is entitled to summary judgment on Gillespie's due process claim.

Plaintiff has asserted a claim against Mayor Boykin for violation of her First Amendment, contending that Boykin orchestrated her termination because she failed to campaign for him in the mayoral race. Defendants argue that plaintiff cannot succeed on this claim for one or more of a number of reasons, including (1) that plaintiff has only hearsay evidence to support this claim; (2) that Mayor Bokyin had no authority to decide whether or not her employment would continue; and (3) that in any event, Gillespie was a "confidential employee" who could be discharged solely on the basis of her political beliefs.

Plaintiff's deposition testimony regarding statements Boykin allegedly made to one Kendrick Slaughter that "Rosie got to go" because she had supported Boykin's opponent in the mayoral election is inadmissible hearsay. However, plaintiff has presented Slaughter's affidavit in response to defendants' motion in which he states:

> Alderman Boykin stated that when he took office as mayor that he was going to fire Police Chief Robert Brown, Richard Schimmel and Deputy City clerk Rosie Gillespie because they were endorsing his opponent in the mayoral race. He stated specifically that their choosing someone else to support (other than him) in the mayoral race cost them their jobs. He also stated that the black people of the town wanted him to fire Chief Robert Brown.

In response to defendants' argument that Mayor Boykin had no authority to terminate Gillespie's employment, Gillespie has presented evidence which she contends demonstrates the mayor's close relationship with the board members and his ability to influence or control their decisions. In addition, she has presented substantial circumstantial evidence tending to support her claim that Boykin had a role in the decision. In a similar First Amendment retaliation case in which the plaintiff alleged that an individual member of a board of supervisors caused her termination for failing to support him in his campaign, the court concluded the board member could be held liable, notwithstanding that he did not have the power himself to terminate the plaintiff. In Crabb v. Itawamba County, Miss., the court stated:

> To use the "cat's paw" analysis, [the plaintiff] must (1) demonstrate that Smith (the individual board member) exhibited discriminatory animus; and (2) that Smith possessed leverage and exerted influence over the titular decisionmaker- i.e., the Board of Supervisors. Roberson v. Alltell Info. Services, 373 F.3d 647, 653 (5 Cir. 2004). Where the titular decisionmaker does not conduct an independent investigation, but instead relies upon the recommendation of someone with retaliatory animus, the causal link between the plaintiff's protected activities and their subsequent termination remains in tact. Long v. Eastfield College, 88 F.3d 300, 307 (5 Cir. 1996). In other words, if there is an indication that the final decisionmaker simply endorsed the decision of the person with the retaliatory motive, the causal link remains. Gee v. Principi, 289 F.3d 342, 345 (5 Cir. 2002).

2005 WL 2648017, at 3 (N.D. Miss. 2005). The court concludes that there are genuine issues of material fact as to the extent and

effect of Mayor Boykin's influence in the Board's decision to terminate (or not to renew) plaintiff's employment.[3]

"[E]mployees in 'policymaking' or 'confidential' positions receive less First Amendment protection than those not in such positions" in view of the need for such employees' political views to comport with those of their superiors. Gomez v. City of Eagle Pass, 91 F. Supp. 2d 1000, 1009 (W.D. Tex. 2000). A "policymaker" is a public employee "whose responsibilities require more than simple ministerial competence, whose decisions create or implement policy, and whose discretion in performing duties or in selecting duties to perform is not severely limited by statute, regulation, or policy determinations made by supervisors." Stegmaier v. Trammell, 597 F.2d 1027, 1035 (5th Cir. 1979). A "confidential employee" is one who "stands in a confidential relationship to the policymaking process, E. g., as an advisor to a policymaker, or if he or she has access to confidential documents or other materials that embody policymaking deliberations and determinations, E. g., as a private secretary to a policymaker." Id. at 1040.

In the court's opinion, defendants have not shown that Gillespie was a confidential employee. Although they declare that a deputy city clerk is a confidential employee, they say nothing

---

[3] The court notes that defendants' rebuttal brief does not address its hearsay argument or its argument as to the limit of Boykin's authority, and instead, defendants argue in rebuttal only that Gillespie's First Amendment claim fails as a matter of law because she was a confidential employee.

of the nature of the position or what the position entails or why it should be considered a confidential position.[4]

Defendants argued in their motion that summary judgment was in order as to plaintiff's claim for slander against Dixon because plaintiff had failed to come forward with testimony or evidence from persons she identified as having told her that Dixon stated she had been fired for stealing. This, however, is not a valid basis for summary judgment, for in response to the motion, plaintiff has denied that she ever stole while employed by defendant and has further presented the affidavit of Millie Mae Taylor in which Taylor swears that Dixon came to her house and told her and her husband that Gillespie had been fired for stealing and that she had stolen a lot of money.

In their rebuttal, defendants make two new arguments for dismissing this claim. First, they argue that as a deputy city clerk, plaintiff was a "public figure," so that to succeed on her claim, plaintiff must prove that Dixon acted with "actual malice." See Speed v. Scott, 787 So. 2d 626, 631 (Miss. 2001) (where the

---

[4] Plaintiff, on the other hand, maintains that she was not a confidential employee, and that she performed essentially ministerial tasks such as keeping the land roll records up-to-date, sending out tax statements and receipts, making address changes, indexing the minute books, collecting fines when needed, answering the phone and making out payroll checks. See Stegmaier v. Trammell, 597 F.2d 1027, 1035 (5th Cir. 1979) (stating that "the question of whether an employee is a policymaker or falls within the policymaker, confidential employee exception to Elrod is a question of fact").

plaintiff is a public figure, she must prove that the defendant acted with actual malice, which means that defendant "must have made the comments either knowing them to be false or in reckless disregard of their truth") (citations omitted). However, the court finds no apparent merit in defendants' assertion that Gillespie was a public figure. Granted, she was a public employee, but that hardly makes her a public figure.[5]

Defendants next argue that because Dixon's alleged statements were not "actionable per se," plaintiff must prove "special harm," which she cannot do. See id. at 632 ("Slander requires proof of 'special harm' unless the statements were actionable per se." . . . [S]landers that are actionable per se . . . need no special harm."). The Mississippi Supreme Court has identified five categories of slander for which no special harm need be shown, i.e., that are "actionable per se," as follows:

> "(1) Words imputing the guilt or commission of some criminal offense involving moral turpitude and infamous punishment. (2) Words imputing the existence of some contagious disease. (3) Words imputing unfitness in an officer who holds an office of profit or emolument, either in respect of morals or inability to discharge the duties thereof. (4) Words imputing a want of integrity or capacity, whether mental or pecuniary, in the conduct of a profession, trade or business;" and in this and some other jurisdictions [5] words imputing to a female a want of chastity.

---

[5] Perhaps defendants could prove otherwise, but they have not done so yet.

Id., (quoting W.T. Farley, Inc. v. Bufkin, 159 Miss. 350, 132 So. 86, 87 (1931)). In Speed, the Mississippi Supreme Court explained at length that merely to label someone a thief is not sufficient; rather, the charge of theft must be a significant one, i.e., it must impute to another criminal conduct constituting a type of criminal offense that, if committed in the place of publication, would be "punishable by imprisonment in a state or federal institution, or regarded by public opinion as involving moral turpitude." Id. (citing Restatement of Torts (Second), § 571). "Otherwise accusing someone of 'theft' of a pencil, or a newspaper, or anything with an identifiable value no matter how minimal would be actionable per se. It is not uttering 'thief' that presumptively steals the accused's good name, but only accusing someone of such a theft as would be a grave offense." Id. at 635. Here, there is no doubt that a charge that an employee was fired for stealing a large amount of money rises to the required level. Cf. Boler v. Mosby, 352 So. 2d 1320, 1323 (Miss. 1977) (customer who alleged he was falsely accused of shoplifting meat from the defendants' store had a claim that was actionable per se); Valley Dry Goods Co. v. Buford, 114 Miss. 414, 427, 75 So. 252, 254 (1917) (actionable per se where plaintiff was accused of stealing $100 from cash register where worked, in conspiracy with someone else). Accordingly, defendants' motion

for summary judgment as to plaintiff's slander claim against Dixon will be denied.

Plaintiff's claim against Boykin for malicious interference with employment requires proof that Boykin's actions (1) were intentional and willful; (2) were calculated to cause damage to the plaintiff engaged in a lawful business; (3) were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and (4) resulted in actual damage and loss." Hammons v. Fleetwood Homes of Miss., Inc., 907 So. 2d 357, 361 (Miss. Ct. App. 2004). Defendants argue that plaintiff cannot maintain this claim because she has not presented any substantial evidence that would satisfy elements (2) and (3); because the City had "every right not to reappoint Gillespie to her job . . . as she was an at-will employee"; and because the mayor was privileged to interfere with the contract between plaintiff and the City. The court concludes that summary judgment is not proper on this claim.

Defendants cite Shaw v. Burchfield, 481 So. 2d 247, 255 (Miss. 1985), for the proposition that Mississippi does not recognize a tortious interference with contract claim in at-will contracts of employment. However, in Levens v. Campbell, 733 So. 2d 753, 760 (Miss. 1999), the court declared, "Shaw does not hold this," and went on to explicitly hold that "a claim for tortious

interference with at-will contracts of employment is viable in this state. . . ." Id.

Defendants argue that because the mayor, by law, has "superintending control of all the offices and affairs of the municipality," see Miss. Code Ann. § 21-3-15, he was privileged to interfere with the contract between plaintiff and the City. They reason that "if, as alleged, Boykin did in fact relay to the Board of Aldermen that Gillespie should not be rehired due to her job performance, clearly he was acting within the scope of his employment and was privileged to interfere with" Gillespie's employment contract. The applicable principle is not simply that one in a position of responsibility has an absolute privilege to interfere with another's employment. Rather, the rule is this: "[O]ne occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third party." Morrison v. Mississippi Enterprise for Technology, Inc., 798 So. 2d 567, 574 (Miss. Ct. App. 2001) (emphasis added); see also King's Daughters and Sons Circle Number Two of Greenville v. Delta Regional Medical Ctr., 856 So.2d 600, 604 (Miss. App. Ct. 2003) (an interference is privileged and not wrongful and actionable "if undertaken by someone in the exercise of a legitimate interest or right"). Here, plaintiff's claim is that Boykin intentionally made up false

allegations about her job performance in order to carry out political retaliation in bad faith. Construing the facts in her favor, this court cannot conclude that Boykin was privileged to interfere with plaintiff's employment contract.

Defendants finally seek summary judgment on plaintiff's claims for punitive damages. Based on the court's conclusions herein regarding plaintiff's other claims, the court cannot conclude at this time that summary judgment is proper as to Gillespie's claim against Boykin and Dixon for punitive damages.[6]

Based on the foregoing, it is ordered that defendants' motion for summary judgment is granted in part and denied in part, as set forth herein.

SO ORDERED this 20th day of February, 2007.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

[6] Of course, punitive damages are not available against the City. See supra n.1.